Next we'll hear United States v. Agosto. Counsel. Thank you, Your Honor. Steve Hubachek, Federal Defender, on behalf of Mr. Agosto. Your Honors, my understanding is, is that the government is going to concede and agree that the matter should be remanded for resentencing because the record is inadequate and that they will not be standing on their appeal waiver argument. So I will proceed directly to the issue of whether or not it should be remanded. Wait a minute. The government is going to concede that it should be, the sentence should be vacated and the case should be remanded for resentencing? That's correct, Your Honor. Why don't we nail that down before we proceed further? It may obviate some argument. Thank you, Your Honor. Moore, on behalf of the United States. In this case, it's the government's position that the record below is ambiguous as to the predicate offenses for the career offender. So the government's position is that the record is ambiguous. I'm sorry. I couldn't hear some words. Could you repeat what you said? Certainly. It's the government's position that the predicate offenses that the Court found, the district court, the record is ambiguous as to how the court decided that those offenses counted towards being a career offender. And because the record is ambiguous and this man faces a 90-month enhancement based on being a career offender, the government will not assert its right to enforce the appellant's waiver of his appeal and believes that it's appropriate in this case for the sentence, the sentencing to be remanded to the district court so the record can be protected on an open record. Do you have an argument with respect to the other issue of mens re in the plea colloquy? Yes, Your Honor. So you will be arguing that, but does the waiver extend to that as well? So you're waiving. We're going to just waive at this point, Your Honor. Okay. So then we would need to decide still the mens re. That's correct. Do we? I mean, it's going to be back in the district court. Do we need to decide? I think yes, Your Honor. On the sufficiency of the plea. Okay. We'll hear from appellant then on the jewels. Because the plea, the other argument is basically to vacate the plea, not just to rescind. That's correct. Okay. Let's hear from appellant on the mens re issue. Thank you, Your Honor. Of course, the requirement that the nature of the offense be correctly described to the defendant is a core requirement of Rule 11. Why does it matter that the magistrate was kind of messy in the way he restated the jewel language? It was stated correctly in the plea agreement, and it was stated correctly in the pre-sentence report. So even if it's plain error, it's hard. It was unobjected to, and I'm not sure whether it's error or plain error. Even if it was, it's hard for me to see how it affects substantial rights since the man was told twice what the law was correctly. The plea agreement, you're right, Your Honor, does correctly set out the elements, and the magistrate judge read those elements in the plea colloquy. I mean, there's kind of a little bit of a twist because when he was Mr. Agosto was asked if he understood, the transcript says no audible response. So it doesn't really reflect whether or not he even understood at that point. But I think the reason this whole thing matters is, is that no matter what a plea agreement says, if a judicial officer stands before a criminal defendant and tells him the wrong mens rea, and I don't think it's just a sloppy application of jewel. It's a dead wrong application of jewel. Jewel says that you have to strongly suspect that the drugs are there, and you also  And Judge Burns's alternative mens rea formulation doesn't cover that portion of the jewel mens rea formulation. So I think that as a matter of law, the statement that strong suspicion is adequate is completely wrong, both under jewel and particularly under this Court's decision in Vallejo. Now, the ---- Roberts. Hold on. I missed that argument. Let's see. The correct jewel instruction tells him two things, strongly suspect and deliberate ignorance. Right. If I may, Your Honor, at page 532, Fed second, at page 704, quote, the defendant has to be aware, actually, that's the first part, isn't it, quote, but we'll start quoting now, is aware that the fact in question is highly probable. That's the suspicion part. But consciously avoided enlightenment. So there's a, it's really at least a two-step process. And actually, the Court in jewel went on to say at page 699, you have to avoid that knowledge with the, quote, intent, quote, to avoid responsibility in the event of discovery, close quote. So jewel is actually a quite complex mental statement. And you're saying the judge only told him the first part, not the second part. That's correct, Your Honor. And that's at page 29 of the excerpt of record. Why wasn't it incumbent? I didn't exactly tell him the first part, because the first part is in the jewel formulation is sort of objective, whether it was highly probable. And here it was subjective. Yeah. He said strongly suspect. I mean, if you wanted to take a jewel plea, I think the best thing to do would be to read, you know, these quotations from jewel, which, and that's not what happened. What are you, what remedy are you asking for? And does it depend on what theory, if we were to accept that this was plein air, what theory we accepted that on? Well, I think it's clear that Mr. Agosto relied upon the magistrate judge's formulation because his immediate response to that was to say, I suspect it, which I'd point out is not even as high a mens rea level as what the judge had told him. And that's significant because McCarthy and this Court's decision in Kamer both say that when a defendant responds in a way that provides an inadequate answer to what the actual element is, that's further evidence that the defendant misunderstands. So is your argument that there's no factual basis for this plea and that it should be vacated? My secondary argument is there's no factual basis. But I think the misdescription of the nature of the offense in and of itself, regardless of whether there's enough evidence in the record to make a factual basis, requires that this plea be vacated. Counsel, my problem with the argument is we're not grading the judge's papers and giving an A when they say the words right and a B when they paraphrase and a C when they miss some words. We're really deciding whether there is a plein air and whether it had a substantial – it affected substantial rights of the defendant. And here what it looks like when I read this transcript is it didn't affect substantial rights. The magistrate goes round and round with this guy. At one point, he tells him even more strongly. He says they'd have to prove at the time you drove the car to the port of entry there was marijuana in the car and they'd have to prove that you knew that. And then when they go round and round, at one point he misstates Jewell. The issue, though, isn't whether he misstates Jewell. Sure he did. The only way to state it correctly is to read it out loud, which would get him an A on the test and would be of no value whatsoever to the defendant in knowing what they're talking about. So he says it wrong, and I can't see that it matters. Well, I have a few responses to that. Number one, I think that it really isn't a question of grading the court because this is just wrong. And the fact that Mr. Agosto – Why does it matter? Because Mr. Agosto explicitly on the record relied on what the magistrate judge told him. Why should we think that he relied on those oral statements in view of the discussion he undoubtedly had with his lawyer, the correct statement in the plea agreement, the fact that the correct statement was read out loud to him, and the correct statement in the pre-sentence report? I mean, if there was an issue here, if this plea should not go down because the man just didn't have the requisites to enter, it seems like it would be incumbent on his lawyer to bring that to the attention of the judge. It was incumbent. And in fact, you know, the government agreed to this plea, too. That's why we're asking for relief on plain error. There clearly should have been an objection. But getting back to the beginning of your question, Your Honor, on page 29 of the excerpt of record, as soon as the judge says, did you know or strongly suspect, the immediate response is, I suspected at page 29 of the ER. So it's clear to me that Mr. Agosto took what the magistrate judge said to heart and immediately responded. And in context, it's clear that he's relying upon the magistrate judge's misdescription of the elements. And in McCarthy, the Supreme Court said when the defendant ---- Except that's not all that happens. The next, very next question on 29, was your purpose that day to cross the car into the United States without having its contents detected by the border guards? Yes, sir. And were you doing that because somebody offered you money to do it? Yes. Well, there'd be no reason to take money to drive a car across the border with a purpose of not having its contents detected unless there's something about the contents where it'll be a big problem if the contents are detected. Well, initially ---- I mean, it's sort of obvious to the common-sense reader, as opposed to the person trying to grade the magistrate's papers, that this fellow wants to plead because he knew he'd taken money to drive dope across the border. Well, I think that those statements would undercut my factual basis argument. But they don't undercut the fact that the magistrate judge had an obligation correctly to describe the elements of this offense, and the magistrate judge fell short by telling him the wrong mens rea. And that's ---- But isn't it also true that the defendant, Mr. Acosta, immediate reaction to the question of did you know there was marijuana in the car was I thought was tequila bottles? That's correct. So that's the explanation for the other answers as well. Right. He might not have declared the tequila bottles, or he may have been taking them in without paying the duty or something along those lines. But, again, McCarthy says that when the defendant's response indicates he misunderstands the mens rea element, that is a fundamental error. And McCarthy's analysis was reaffirmed effectively as to this point in the Supreme Court's subsequent decision in Vaughn where it indicated that the type of response that indicates the defendant doesn't understand the mens rea element bespeaks the prejudice of an unknowing plea to which the judge's indifference was an affront to the integrity of the judicial system. So that makes clear that this affects substantial rights and that it's a type of error that should be recognized on plain error review. And that's Vaughn at page 68 to 69, 535 U.S. And this Court's decision in Pena also reaffirms that the requirement that the nature of the offense be correctly described is a core function of Rule 11. So as a result, I think this is both a plain error, it affects substantial rights, and it's also the type of error that the Court should recognize under the Vaughn decision and Pena. If I could reserve the rest of my time for rebuttal once the Court has questions. Morroquin, I just wanted to clear up one point. In the transcript on page 28, the Court says to the defendant, at the time, was there marijuana concealed in the car? The defendant, yes. Did you know that? Did you know there was marijuana in the car? The defendant, I thought it was. They told me it was tequila bottles. So the defendant doesn't say, I thought it was tequila bottles. He responds and says, I thought it was. And the judge would usually say that. Kagan. Actually, I read this as being a sentence where he's reformed his thought. I thought it was tequila bottles. They told me it was tequila bottles. So I think I don't read it the way you do. Suppose, counsel, we were to find that this did affect substantial rights under Pena and that line of cases. What would be the consequences of practical matter? It doesn't matter because this Court has found in U.S. v. Albert that the district court can base his sentence at judgment on any of the facts before it. And it's not only the facts that were taken before the magistrate that he relied on. He also relied on probation report. He relied on the plea agreements. In addition, he also ---- But does his conviction, does his plea stand if we say that he did, you know, that he did not fundamentally understand one of the elements of the crime to which he pled? Doesn't we have to vacate the plea itself? There is a finding of facts, Your Honor. The magistrate gives a finding of facts. And that finding of facts was sent to defense and was sent to the government. At the beginning of the sentencing colloquy ---- But wait a minute. I thought, as does Judge Worthenwell, that the issue here that we're discussing with regard to the mens rea is whether the plea agreement stands at all. Is that not right? I think that it does stand, Your Honor. And specifically because the ---- one, the defendant never objected. And the factual findings were provided from the magistrate judge to the district court judge. Those factual findings say that the defendant was advised of all the elements of the offense. And he was clearly and accurately advised of the element of offense. And then from there, the judge said to both parties, will you stipulate to the findings of facts of the magistrate judge? And the answer was yes. And here, there is no doubt that the defendant is guilty. This is not a case where there's a question of whether or not he's guilty. He says he's guilty. He says he's guilty at the time of his arrest. He says, when he meets with the probation officer, yes, I knew there was marijuana. This is not the case where this is not somebody who says he's not guilty. This is a case ---- Right, Counsel. You know, but this is ---- Rule 11 is really technical. And it has all these requirements in it, and case law glossed on top of that. I was a former district court judge as is Judge Kleifeld. And it seems really technical. And the Ninth Circuit hands down all this law and says you must do these things. And if you don't do these things, we're vacating the plea. And that is a possibility in this case, that that would happen. And I guess my question was, wouldn't you just reindict or have him take another plea? I mean, what would ---- Well, I think in this case, we would probably end up with a trial, is my guess, because now ---- You'd just go to trial on the standing indictment, right? That's correct. That's what the impact would be, because certainly now that this man has been found a career offender, and the government, although it's not before the court, has no doubt that he is in fact a career offender, certainly he would have nothing to lose by going to trial. So if the court were to vacate, that is the government's remedy would be to take this to trial. Can you tell me where in the record the magistrate judge correctly articulated the mens rea beforehand? It's on page 18, Your Honor. And I will also say that Juul does talk about deliberate ignorance, but there's another case law, United States v. Neal, which says when someone's taking a plea, when a judge is taking a plea, the standard is not beyond a reasonable doubt. The standard is whether or not the judge thinks that there's sufficient factual basis. This is not a case that's going to a jury where you have that same standard. Well, there are two issues there. One is, is there a factual basis for the plea? And you can find a factual basis even where the defendant says, I didn't do it, based on the prosecutor's representations, the pre-sentence report, and whatever else there may be in the record. The second issue, entirely distinct from that, is whether the defendant properly pleaded to it. And that's the issue that we've been questioning you about. A man can be guilty plain as day, but if he says I didn't do it, he goes to trial. Unless the government accepts an Alford plea and the judge accepts the Alford plea, the government always recommends against an Alford plea. Most judges don't take them. And it's the second issue that we're questioning you about, so don't mix it up with the first one. Do you understand the distinction? Yes, Your Honor. You're saying whether or not there is the elements of the crime were explained to him properly and whether by the magistrate judge saying, did you know or did you strongly suspect, was that something that should overturn this plea? And it's the government's position that that is not something that should overrule this plea. Certainly, there's evidence that he was explained what he had to know. But, Your Honor, I have two questions. One is that it was Your brief doesn't address this question at all, which I found unusual, and I'm wondering why that was and whether we have a waiver problem as to the decision. The brief doesn't, Your Honor, and I really have no explanation for that. It was written by someone else in the government, and there were two 28J letters that did come back and talk about this issue. The 28J letters did talk about the Jewell case and about the United States v. Neal. So I think the government did come back and try to remedy the record to a certain extent. It would be helpful if the government lawyers, as well as the defense lawyers, went into these pleas prepared so if the judge is making a mistake, government counsel can get it corrected right then and there on the record. This fellow obviously intended to plead, and it was messed up. It could have been fixed real easily if it was. Tell me about tequila bottles. Why would he have to conceal bringing tequila bottles into the U.S.? I don't understand. I'm not sure exactly what the customs rule are, Your Honor, so I can't really represent it. It seems kind of relevant here because that sentence could be read, as Judge Berzon said, I thought I was trying to sneak tequila bottles into the U.S. I didn't realize I was trying to sneak dope in. That's one reading of the sentence that's possible. But it doesn't make any sense if there's no problem bringing tequila bottles in. It would be like saying I was trying to sneak my suitcase full of my clothes and reading material into the U.S. It doesn't make any sense. You don't have to sneak them in. So what's the problem with bringing tequila bottles into the U.S.? I can't represent that to the Court, only from personal experience, knowing that you are questioned at the Board on what kind of things you're bringing back, and knowing from a younger age that there are certain worms inside tequila bottles that are not allowed in, but I can't represent it. The worms? Yes. I have five worms, but I cannot represent to the Court that there's some. I buy tequila at the liquor store. I had no idea you couldn't import it. They must import it. It says imported from Mexico. Right. But there's live worms in some tequila bottles. They're still alive? When they drop them, they're dead. They'd be really drunk. And if it dies, it's good tequila. But if you go to a liquor store here, you don't find tequila bottles with worms in them. But when you go to Mexico, you can buy. They're not live, let me tell you. Anyway, so because of that, and because of the --" that is the statement about the tequila bottles, and also the statement in which the defendant answered, I suspect it, this error doesn't seem to have seems to have had some impact. It wasn't simply something that went by and that the defendant didn't respond to and could not have affected him. Well, Your Honor, plus one other thing. The other problem is that at the point that he stated the crime elements correctly and said, do you understand, the transcript says there was no audible response. That's correct, Your Honor. Although the Court does go back and say yes, assuming that that was the defendant's response, the Court put that on the record. So what I'm saying is it's a fairly unusual transcript, because often these kinds of errors will just go by and we have no basis for thinking it affected anything. But here, we have some basis for thinking it may have affected the defendant. Well, when you look at what the elements were, the way that the Court, the magistrate court put it out to the defendant, he says, so what would have to be established for you to be convicted of this charge is the following. And he goes very extensively through what the government would have to show. First, the government would have to prove that on the day of the arrest, you drove this automobile to the port of entry at San Ysidro, that you were trying to come into the United States from Mexico. They'd have to establish that. They'd have to prove at the time you drove the car to the port of entry that there was marijuana in the car, and they'd have to prove that you knew that. They'd also have to show that you were acting purposefully and that your purpose that day was to cross the car into the United States without having the marijuana detected. And the immigration or border patrol officers there. So that's very specific. Okay. Then do you understand that? No audible response. Then later we come back to the question on page 28, did you know there was marijuana concealed in the car? Did you know that? I thought it was tequila bottles. That's some evidence they didn't understand at the first time. And you can't go back and see what the inflection of this person's voice was. He could be saying, did you know that? Did you know there was marijuana in the car? He could be saying, I thought it was. He told me it was tequila bottles. Or he could say, I strongly suspect, and he says, I suspected it. So every indication we have in the record is at least consistent with the conclusion that he really did not understand it. Or he could look at it the other way and say, the defendant says, I thought it was. They told me it was tequila bottles, but I thought it was. And the judge goes back to clarify it, and he says, I suspected it. The thing we do know here is that the defendant, after his arrest, acknowledges that he knows what's in the vehicle. He acknowledges what's in the plea agreement. All these facts show that the defendant knew what was in that vehicle. So we can go round and round on what the inflection on the voice is, what really was meant, but this is not the case where the defendant does not know what's in the vehicle. But see, where do we look in the record for where he conceded that he knew it was marijuana? It's in the probation report, Your Honor, in the statement of facts. The pre-sentence report? Yes. And when does the pre-sentence report say he did this? After the guilty plea or after the plea? No, post-Miranda. He freely and voluntarily waives, and there's a discussion about what he knew and why he was driving the vehicle across. Oh, you're talking about page 4, line 14, which the defendant knew concealed marijuana? I'm sorry, Your Honor. Are you on the pre-sentence report? Yes. I want to know if that's what you're talking about. No, that's the defendant's statement to the offense where he adopts there he – after the plea, he adopts the statement of facts. Okay. Tell me where to look. On page 2, the offense conduct, line 36. What I'm looking for is where he says he knew it was dope. Well, the defendant, after his arrest, he's advised it was Miranda rights, which he acknowledged and waived. The defendant – Yes. See, that's the line you pointed me to, but it doesn't tell me the answer. It specifically – it goes on to say the defendant said he was not to receive – he was driving a low vehicle in lieu of paying off his wife's debt for owing a methamphetamine dealer. The defendant was not to receive money, but he was to pay his wife's debt in full. Additionally, the defendant reported that the drug dealer, Jose Luis Ramirez, had his 6-month-old child, and the agents were assisting in finding that 6-month-old child. And where does it say that he was driving with marijuana in the car? I'm sorry, Your Honor, I think my recollection was that it was clear. Well, you're well over time, and I guess we've asked our questions, so thank you, counsel. Thank you, Your Honor. Your Honor, Neal and Alper are factual basis cases, not nature of defense cases. And this Court's decision in Kamer says that even an adequate factual basis doesn't cure an error in describing the nature of the offense. So I think under this Court's decision in Kamer – and I'd point out that the defendant actually, I believe, admitted the facts of the case in Pena as well, and this Court nonetheless reversed in both of those cases. And the court's decision in Kamer says that even an adequate factual basis doesn't cure an error in describing the nature of the offense. The facts simply don't matter. The pre-sentence report doesn't describe the elements of the offense to the defendant. They go over the facts with the defendant. And the probation officer is obviously not the court, and the court is tasked with the responsibility of making sure the defendant understands the nature of the offense under Rule 11. So basically, the pre-sentence report simply can't cure it. Finally, when the magistrate judge says one thing and the plea agreement says the other, the defendant's entitled to rely upon what the magistrate judge says, just as when the plea agreement says you can't appeal and the judge says you can, the defendant's entitled to rely on the judge. So this is an error that, although the court can consider the whole record, once the magistrate judge told them that strongly suspected is enough, that error was never cured by any judicial officer, so the plea is invalid. Thank you, Your Honor. Thank you, counsel. The United States v. Augusto is submitted.
judges: Kleinfeld, Wardlaw, Berzon.